[Cite as *Swank v. Ohio Dept. of Transp.*, 2010-Ohio-2316.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHELLE A. SWANK

    Plaintiff

    v.

OHIO DEPARTMENT OF TRANSPORTATION

    Defendant

    Case No. 2009-08608-AD

Deputy Clerk Daniel R. Borchert

MEMORANDUM DECISION

{¶ 1} Plaintiff, Michelle A. Swank, filed this action against defendant, Department of Transportation (ODOT), alleging her 2003 Chevrolet Tahoe received paint damage while traveling on US Route 40 when ODOT personnel were applying fresh centerline paint to the roadway at approximately 11:00 a.m. on October 8, 2009. Plaintiff, more specifically, located her paint damage incident "on Route 40 in Tipp City/Huber Heights around the corner at Sullivan Rd." According to plaintiff, yellow centerline paint "ran across the road (and) I was not able to go around the running paint because it was raining and went (across) the whole road." Plaintiff pointed out she later discovered "yellow splashes down the entire left side (driver side) and on the rear of the auto." Plaintiff recalled she tried to remove the paint from her vehicle by washing it "and then not only did the yellow paint not come off but it was up to the windows on the (driver's) side; on the entire rear, and on the left (tire's) trims." Plaintiff asserted she reported her damage to ODOT employee, Jeff Whetstone, on October 9, 2009 and he confirmed a paint crew had applied centerline paint to US Route 40 on October 8, 2009. Plaintiff submitted photographs of the roadway area where her paint damage incident

occurred. The photographs depict a yellow painted centerline with a vast area where it appears the centerline paint has run or bled onto the traveled portion of the roadway. The photographs show roadway areas where fresh yellow paint has obviously exuded from the application point across the roadway. Plaintiff also submitted photographs depicting the paint damage on her 2003 Chevrolet Tahoe. These photographs depict damage consistent with driving over a sizable area of fresh wet paint. Plaintiff contended the paint damage to her vehicle was proximately caused by negligence on the part of ODOT in conducting road painting operations on US Route 40 on October 8, 2009. Plaintiff seeks recovery of damages in the amount of $2,500.00 for paint removal costs and car rental expenses. The filing fee was paid.

{¶ 2} Defendant acknowledged ODOT personnel were painting the yellow centerline on US Route 40 in Miami County on October 8, 2009; including the roadway area where plaintiff asserted her damage occurred, which ODOT located at milepost 0.69. Defendant explained three trucks were involved in the painting operation which is classified as "a moving work zone that comes under the authority of the Manual of Traffic Control for Construction and Maintenance Operations (Manual)." Defendant insisted all traffic control requirements mandated by the Manual were observed during the course of the centerline painting. Defendant pointed out the "[t]raffic control that was in effect for the paint operation in question included the paint striper and two pickup trucks with signage." Additionally, defendant noted in describing the operation "[t]here were signs stating 'Wet Paint' and cones were placed throughout the operation on the RPMs (reflective pavement markers) of US 40." Defendant insisted "[t]he cones were not picked up until the paint was dry and then the crew left for another operation on I-75." Defendant denied any liability in this matter arguing that plaintiff did not offer sufficient evidence to prove her damage was attributable to any conduct attributable to ODOT. Defendant asserted the paint crew did not leave the painting operation on US Route 40 until the yellow centerline paint was dry. Defendant advised that the painting crew used all proper traffic control during the painting operation and consequently, defendant contended ODOT discharged any duty of care owed to the motoring public.

{¶ 3} Defendant submitted a statement from ODOT employee, Jeff Whetstone, regarding his knowledge of the October 8, 2009 painting activity and his contact with plaintiff when she reported the paint damage to her vehicle on October 9, 2009.

Although Whetstone was in charge of the painting operation, it does not appear he was actually onsite during the painting. Whetstone recorded the centerline of US Route 40 was covered during the morning of October 8, 2008 as paint was applied and was "released to public travel as (the) centerline cured." Whetstone recalled "[l]ater in the day light rain showers moved into the area causing some washing of centerline in limited areas," but the centerline remained, "intact." Whetstone acknowledged receiving a telephone call from plaintiff on October 9, 2009, "informing me she had got into some yellow paint on Route 40 the previous day at about 11:30 a.m." Whetstone offered the following written narrative of his conversation with plaintiff stating: "she (plaintiff) said it was a small amount (paint) on the driver's side of the vehicle. I asked her if she made any attempt to wash the paint off her vehicle as it is a latex water soluble paint and although it had been 26 hours it may still wash off in a car wash. She stated at that time she made no attempt to wash the vehicle as she thought the rain would wash it off." Defendant submitted a copy of Whetstone's handwritten phone log where he memorialized his recollection of the conversation with plaintiff. Whetstone noted in the phone log the following information: "Got in paint (yellow) on 40 at 11:30 Thurs. 10/8 called 12:50 on the 9th Fri. Noticed in the paint thurs made no attempt to remove thought rain would wash it."

{¶ 4} Defendant submitted written statements from the four ODOT employees involved in the October 8, 2009 painting, Mark Knoch, who worked on the paint striper, striper driver, Mark Hovatter, James Alexander, and Doug Snider. Snider recorded cones were placed on the roadway "about every 100" feet and after paint was applied the crew "waited about 15-20 minutes until the paint was dry and picked up our cones." Alexander recalled all advisory signs of "Wet Paint" were in place on all trucks in the moving operation. Alexander noted cones were placed on every RPM on the centerline approximately every eighty feet and "[a]fter the paint was dry we picked up the cones and left." Knoch recalled signage was in place, cones were positioned on the centerline, and the cones were not removed until "after the paint had cured." Additionally, Knoch recalled "[t]he paint did not track and was dry too the touch." Also Hovatter advised cones were positioned about one hundred feet apart during the painting procedure and the cones were not removed until "[t]he paint would not track no more." Hovatter related "I got passed by a SUV or a Mini Van" at sometime while he

was driving the paint striper. Additionally, Hovatter related, "I saw cars cross line and not pick up paint on tires."

{¶ 5} Plaintiff filed a response pointing out she submitted photographs depicting yellow paint running across the roadway from the centerline area and no tire marks are present on the roadway or centerline. Plaintiff advised the particular portion of US Route 40, a section over one mile long, has had the centerline repainted "since my formal complaint" (presumedly after November 2, 2009, the date this action was commenced). Plaintiff disputed defendant's contention that she did not try to remove the paint from her vehicle by washing it noting, "I did attempt to wash the car off." Plaintiff also disputed defendant's assertions that cones were in place on the centerline until the paint had dried. Plaintiff stated "[w]hen I went by around 11:00 am (on October 8, 2009) none of the safety precaution item that (ODOT personnel) had noted were present" on the roadway. Plaintiff again referenced the photographs she submitted of yellow paint bleeding across the road, arguing "[i]f the paint ran (across) the road it could not have been dry." Furthermore, plaintiff offered that "[t]heir [sic] were no signs in place and there were no workers present" when she traveled on US Route 40 on October 8, 2009. Plaintiff reiterated she unsuccessfully attempted to wash the paint from her vehicle after speaking with ODOT employee, Jeff Whetstone. Plaintiff referenced evidence submitted by defendant (Jeff Whetstone's phone log) regarding a November 2, 2009 telephone complaint by a Bob Bush who claimed he received yellow paint on his truck while traveling on US Route 40 in Miami County on an unspecified date. Apparently, the last time yellow paint was applied to US Route 40 prior to November 2, 2009, was October 8, 2009.

{¶ 6} For plaintiff to prevail on a claim of negligence, she must prove, by a preponderance of the evidence, that defendant owed her a duty, that it breached that duty, and that the breach proximately caused her injuries. *Armstrong v. Best Buy Company, Inc.,* 99 Ohio St. 3d 79, 2003-Ohio-2573,¶8 citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St. 3d 75, 77, 15 OBR 179, 472 N.E. 2d 707. Plaintiff has the burden of proving, by a preponderance of the evidence, that she suffered a loss and that this loss was proximately caused by defendant's negligence. *Barnum v. Ohio State University* (1977), 76-0368-AD. However, "[i]t is the duty of a party on whom the burden of proof rests to produce evidence which furnishes a reasonable basis for

sustaining his claim. If the evidence so produced furnishes only a basis for a choice among different possibilities as to any issue in the case, he fails to sustain such burden." Paragraph three of the syllabus in *Steven v. Indus. Comm.* (1945), 145 Ohio St. 198, 30 O.O. 415, 61 N.E. 2d 198, approved and followed.

{¶ 7} Defendant has the duty to maintain its highways in a reasonably safe condition for the motoring public. *Knickel v. Ohio Department of Transportation* (1976), 49 Ohio App. 2d 335, 3 O.O. 3d 413, 361 N.E. 2d 486. However, defendant is not an insurer of the safety of its highways. See *Kniskern v. Township of Somerford* (1996), 112 Ohio App. 3d 189, 678 N.E. 2d 273; *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App. 3d 723, 588 N.E. 2d 864.

{¶ 8} Plaintiff has the burden of proof to show her property damage was the direct result of the failure of defendant's agents to exercise ordinary care in conducting roadway painting operations. *Brake v. Department of Transportation* (2000), 99-12545-AD. A failure to exercise ordinary care may be shown in situations where motorists do not receive adequate or effective advisement of an ODOT painting activity. See *Hosmer v. Ohio Department of Transportation*, Ct. of Cl. No. 2002-08301-AD, 2003-Ohio-1921.

{¶ 9} "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Cascone v. Herb Kay Co.* (1983), 6 Ohio St. 3d 155, 160, 6 OBR 209, 451 N.E. 2d 815, quoting *Neff Lumber Co. v. First National Bank of St. Clairsville, Admr.* (1930), 122 Ohio St. 302, 309, 171 N.E. 327. This court, as trier of fact, determines questions of proximate causation. *Shinaver v. Szymanski* (1984), 14 Ohio St. 3d 51, 14 OBR 446, 471 N.E. 2d 477.

{¶ 10} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548. In the instant action, the trier of fact finds that the statements of plaintiff concerning fresh paint exuding onto the roadway

are persuasive.

{¶ 11} In the instant claim, plaintiff has provided sufficient proof to establish her vehicle received paint damage as a proximate cause of negligence on the part of defendant. *Hosmer. Broz v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2004-08863-AD, 2005-Ohio-453. Defendant is liable to plaintiff in the amount of $2,500.00, plus the $25.00 filing fee, which may be reimbursed as compensable costs pursuant to R.C. 2335.19. See *Bailey v. Ohio Department of Rehabilitation and Correction* (1990), 62 Ohio Misc. 2d 19, 587 N.E. 2d 990.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

MICHELLE A. SWANK

Plaintiff

v.

OHIO DEPARTMENT OF TRANSPORTATION

Defendant

Case No. 2009-08608-AD

Deputy Clerk Daniel R. Borchert

ENTRY OF ADMINISTRATIVE
DETERMINATION

Having considered all the evidence in the claim file and, for the reasons set forth in the memorandum decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount of $2,525.00, which includes the filing fee. Court costs are assessed against defendant.

DANIEL R. BORCHERT
Deputy Clerk

Entry cc:

Michelle A. Swank
9290 Shroyer Drive
Tipp City, Ohio  45371

Jolene M. Molitoris, Director
Department of Transportation
1980 West Broad Street
Columbus, Ohio  43223

RDK/laa
1/25
Filed 2/22/10
Sent to S.C. reporter 5/21/10